# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **LEXINGTON INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 07-0322-WS-C** |
| ) | |
| **EVAN J. WOLFE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the Court on the motion of Great Southern Outdoors Foundation and Institute, Inc. ("Great Southern") to intervene. (Doc. 80). The plaintiff and defendant Evan J. Wolfe filed briefs in opposition, (Docs. 84, 90), and Great Southern declined the opportunity to reply. (Doc. 83). After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to intervene is due to be denied.

According to the complaint, the plaintiff issued to defendant Evan J. Wolfe a policy of insurance covering certain property in Mobile County. The property was damaged by Hurricane Katrina, and the plaintiff paid out over $1 million in claims on the loss. The complaint alleges that the application, completed by Wolfe and/or co-defendant Edmond H. Smith IV, contains several material misrepresentations, including that Wolfe owned the property and resided there, when in fact Wolfe never resided there and the transaction was structured to hide that the residence was that of Smith (who was attempting to hide the house from a large judgment creditor). The complaint accuses the defendants of fraud and seeks both rescission of the policy and damages representing the payments made on the Katrina claim. (Doc. 1).

Prior to the motion to intervene, the plaintiff obtained judgment against Smith, requiring him to pay the plaintiff the benefits paid out on the Katrina claim. (Docs. 34,

35).  The plaintiff also received summary judgment against Wolfe declaring the plaintiff entitled to rescind the policy due to misrepresentations made in the application.  (Doc. 78).

Great Southern asserts that Wolfe conveyed the property to Great Southern shortly before Katrina and that this conveyance rendered Great Southern an insured under the policy pursuant to Alabama statute.  (Doc. 81).  Great Southern seeks intervention as of right under Federal Rule of Civil Procedure Rule 24(a).  (Doc. 80, ¶ 5).

Intervention as of right is allowed only "on timely motion," Fed. R. Civ. P. 24(a), and the assessment of timeliness is left to the Court's discretion.  *Walters v. City of Atlanta*, 803 F.2d 1135, 1150 n.16 (11th Cir. 1986).[1]

> A district court must consider four factors in assessing timeliness, namely (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. [citation omitted] This analysis applies whether intervention of right or permissive intervention under Fed. R. Civ. P. 24 is claimed.

*United States v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir. 1983); *accord Georgia v. United States Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002).  Great Southern's motion is untimely under this test.

As noted, Smith is a named defendant.  He is also the registered agent and sole incorporator of Great Southern and the primary contact for purposes of Great Southern's 501(c)(3) application.  (Doc. 80, Exhibit D; Doc. 84, Exhibit A).  He is, furthermore, the ascribing witness to the deed which supposedly transferred the property from Wolfe to

---

[1]No party cites a single case addressing intervention under Rule 24, much less any authority addressing the timeliness of such a motion.  While the Court's discussion may not be exhaustive, the parties are in no position to complain.

Great Southern and rendered Great Southern an insured under the policy.  (*Id*., Exhibit B). Under these circumstances, Great Southern knew or should have known of its interest in the case when Smith knew or should have known.

This action was filed May 8, 2007.  Smith knew or should have known of Great Southern's interest in the case no later than May 17, 2007, when his lawyer wrote the plaintiff's attorney acknowledging Smith's awareness of the lawsuit.  (Doc. 12, Exhibit A).  Great Southern's motion to intervene was not filed until December 30, 2008, over 19 months later.

The timeliness inquiry focuses not simply on the intervenor's awareness of the lawsuit, but on its "appreciation of the potential adverse effect an adjudication of that action might have on [its] interests."  *Campbell v. Hall-Mark Electronics Corp*., 808 F.2d 775, 777 (11th Cir. 1987) (internal quotes omitted).  Great Southern's proposed pleading recognizes that its entitlement to insurance benefits is derivative of that of Wolfe, its predecessor in title to the insured property.  Were the policy rescinded, as the complaint requested, Great Southern would have no claim to benefits.  Therefore, the "potential adverse effect an adjudication" of the lawsuit would have on Great Southern's alleged interest was obvious from the beginning, and the entire 19-plus months from Smith's knowledge of the lawsuit to Great Southern's filing is to be considered.

In *Campbell*, the Court held that the first factor weighed against the intervenor when it had been aware of the lawsuit for over fourteen months and aware of its interest in the lawsuit for approximately six months.  808 F.2d at 776-78.  As in *Campbell*, Great Southern waited an "unreasonable ... length of time ... before moving to intervene."  *Id*. at 779.

Prejudice to existing parties depends largely upon how far the proceedings have advanced.  In particular, "[t]here is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant."  7C Charles A. Wright & Arthur R. Miller, <u>Federal Practice</u>

and Procedure, § 1916 at 561-62 (3rd ed. 2007); *accord McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970) ("[A]n attempt to intervene after final judgment is ordinarily looked upon with a jaundiced eye."); *United States v. United States Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) ("Interventions after judgment have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court.").

Here, the motion to intervene comes only after a money judgment against Smith and a summary judgment against Wolfe allowing the plaintiff to rescind the policy. The latter is especially problematic, because Great Southern's claim depends upon the policy being valid and operative. To allow Great Southern to intervene at this late date and relitigate rescission would deprive the plaintiff of the fruit of its year and a half of work. Such a result prejudices the existing parties. *E.g., Jefferson County*, 720 F.2d at 1517 (when the motion to intervene followed two trials and negotiations for consent decrees, granting intervention "would plainly have prejudiced the existing parties"); *see also Campbell*, 808 F.2d at 779 ("Intervention at this point would only jeopardize a legitimately negotiated, accepted, and approved settlement.").

With respect to prejudice to Great Southern, "the thrust of the inquiry must be the extent to which a final judgment in the case may bind the movant even though he is not adequately represented by an existing party." *Jefferson County*, 720 F.2d at 1517. The Court will assume for present purposes that Great Southern's interests are not adequately represented by Wolfe, because Great Southern alleges that he transferred his interest in the insured property before the loss.[2] It may even be assumed that Great Southern will be

---

[2] The assumption is a generous one. Wolfe denies under oath that he deeded the property to Great Southern, and he declares his purported signature on the deed to be a forgery by Smith or someone in league with him. (Doc. 82, Exhibit B; Doc. 90, ¶ 2). Moreover, Great Southern's articles of incorporation are dated August 2006, over a year after the purported deed from Wolfe. (Doc. 84, Exhibit A at 1, 6). The deed itself, though dated July 8, 2005, was not recorded until 2007. (*Id.*, Exhibit B at 1).

-4-

bound by the rescission, though this is far from clear.

Nevertheless, Great Southern can suffer no legally significant prejudice from being denied intervention unless it has some colorable claim to present on intervention. *See Federal Trade Commission v. Legal Distributors, Inc*., 890 F.2d 363, 365 (11th Cir. 1989) (court should consider "the purpose for which intervention is sought"); *Stotts v. Memphis Fire Department*, 679 F.2d 579, 582 (6th Cir. 1982) (the "purpose for which intervention is sought" weighs against intervention when the requested relief "is substantively unavailable as a matter of law").

Great Southern's claim is simply this: once Wolfe conveyed the insured property, Great Southern "became an 'insured' pursuant to Alabama Code § 27-14-4." (Doc. 81, ¶ 3). That section, however, merely provides that a policy of property insurance is unenforceable "except for the benefit of persons having an insurable interest in the things insured as at the time of the loss." Becoming an owner of the property would certainly give Great Southern an insurable interest, allowing it to acquire property insurance, but it would not render Great Southern an insured under a pre-existing policy unless the policy so provides. The policy defines the term "insured" as including only the named insured (Wolfe) and his relatives residing on the property. (Doc. 1, Exhibit B at 1, 15).[3] Given the policy terms, it is facially impossible for Great Southern to be insured under the policy.

The Court can fathom no unusual circumstances militating in favor of intervention. On the contrary, the present motion appears to be a continuation of Smith's persistent efforts to thwart the civil justice system,[4] a circumstance which weighs against the present

---

[3]An organization can be an insured only to the extent it is legally responsible for animals or watercraft subject to the policy and owned by another insured. (*Id*. at 15). Great Southern does not allege insured status under this provision, which certainly could not support its demand for $3.4 million in policy benefits. (Doc. 80, ¶ 7).

[4]The following non-exclusive listing gives a flavor of his conduct. Because he was incarcerated in a local jail when suit was filed, the plaintiff provided Smith an informal

-5-

motion.

For the reasons set forth above, Great Southern's motion to intervene is **denied**.

DONE and ORDERED this 2nd day of March, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

extension of time to respond to the complaint until 20 days following his release.  Instead, Smith removed his electronic monitoring device after being temporarily released for medical treatment in New Orleans, fled to Costa Rica, and remained there in silence for months before being apprehended by law enforcement and returned to Mobile in September 2007.  Smith continued to ignore the complaint, which resulted in entry of default judgment (after notice to Smith) in November 2007.  (Doc. 34).  Almost five months later, he filed a motion asking that the judgment be set aside, but that motion was denied in May 2008 due to his dilatoriness and inability to articulate any meritorious defense.  (Doc. 50).  Smith then elected to ignore the plaintiff's post-judgment discovery, which ultimately resulted in a report and recommendation that he be held in civil contempt.  (Doc. 79).  In January 2009, the Magistrate Judge granted the plaintiff's motion for leave to conduct Smith's deposition in order to discover assets from which to satisfy its judgment.  (Doc. 88).  Smith, by then in custody on federal criminal charges, appeared for his deposition but refused to answer any questions.

Because Great Southern, to the extent it exists at all, appears to be only the legal or practical alter ego of Smith, its conduct can reasonably be viewed as an extension of Smith's own.